# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENN MUTUAL LIFE INSURANCE COMPANY,** <br> Plaintiff, <br> v. <br> **WELLS FARGO BANK, N.A.,** as Securities Intermediary, <br> Defendant. | **CIVIL ACTION NO. 18-40** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                           **October 1, 2018**

Plaintiff Penn Mutual Life Insurance Company filed this declaratory judgment action, seeking a determination that the life insurance policy it issued on the life of a Florida resident is void *ab initio*. Wells Fargo moves to dismiss the complaint, arguing that the Court should decline jurisdiction pursuant to the Declaratory Judgment Act ("DJA")[1] in favor of an action pending in Florida state court.[2] For the reasons set forth below, the Court will grant the motion and decline to exercise jurisdiction.

### I.     BACKGROUND

Penn Mutual seeks a declaration regarding the validity of the $3 million life insurance policy ("the Policy") it issued on the life of Sylvia Criden-Roebuck, a Florida resident. When the policy was issued in 2007, the original owner was the Sylvia Criden-Roebuck 2007 Insurance Trust. Shortly after the policy was issued and in force, Ms. Criden-Roebuck and the Family Trust that she formed sold the beneficial interest in the Insurance Trust that owned the Life Insurance

---

[1] 28 U.S.C. § 2201.

[2] *Wells Fargo Bank, N.A. v. Penn Mut. Life Ins. Co.*, No. CACE18004704 (Fla. 17th Cir. Ct. Feb. 28, 2018).

Policy to the GIII Accumulation Trust.[3] In 2015, GIII placed the Policy into a securities intermediary account with Wells Fargo.[4] The Policy is presently owned by Wells Fargo as securities intermediary.[5] After Ms. Criden-Roebuck's death on October 20, 2017, Wells Fargo and the insured's son, Arthur Criden, both submitted a claim for the benefit payable under the Policy. During the claim review process, Penn Mutual "determined that the policy may have been an illegal wagering contract" procured by and paid for by investors through the GIII Accumulation Trust.[6]

Instead of formally denying the claim, Penn Mutual filed this declaratory judgment action on January 5, 2018. First, Penn Mutual requests a declaratory judgment that the Policy is void *ab initio* as "an illegal wagering contract" under Delaware law.[7] Second, Penn Mutual requests a declaration that the Policy lacked "any insurable interest under Delaware law."[8] Third, alleging that the trust formed to obtain the Policy was a "sham," Penn Mutual seeks a declaration that the trust is void *ab initio* under Delaware law and therefore "lacked capacity to apply for the Policy, thus rendering the Policy void *ab initio*."[9]

On February 28, 2018, Wells Fargo filed an action in Florida state court against Penn Mutual, Arthur Criden as the personal representative of the Criden-Roebuck estate, and Penn Mutual's Florida-based agent, Larry Schweiger. Wells Fargo asserts a claim for breach of contract against Penn Mutual for its failure to pay the death benefits as required under the

---

[3] Compl. ¶ 44; *see also* Fla. Compl. ¶ 23 (Ex. A to Lander Decl.) [Doc. No. 23-2].
[4] Compl. ¶ 28.
[5] *Id.* ¶¶ 29-31.
[6] *Id.* ¶ 32.
[7] *Id.* ¶ 53.
[8] *Id.* ¶ 59.
[9] *Id.* ¶¶ 61-62.

policy.[10] If Penn Mutual successfully avoids coverage under the Policy based on the allegation that Ms. Criden-Roebuck did not pay the initial premiums with her own funds, Wells Fargo seeks damages from Schweiger for fraud, negligent misrepresentation, and negligent procurement based on his actions in connection with the Policy.[11]

## II. DISCUSSION

Wells Fargo argues that the Court should decline to exercise jurisdiction pursuant to the DJA, which "authorizes district courts to 'declare the rights and other legal relations of any interested party seeking such declaration'"[12] but "does not itself create an independent basis for federal jurisdiction."[13] Instead, actions seeking only declaratory relief are discretionary and are not "subject to the 'normal principle that federal courts should adjudicate claims within their jurisdiction.'"[14] Courts may therefore decline jurisdiction over such suits.[15]

In *Reifer v. Westport Insurance Co.*,[16] the Court of Appeals for the Third Circuit established factors to be considered when determining whether to decline jurisdiction, beginning with whether there is a parallel state proceeding.[17] Though not dispositive, "the existence of a parallel state proceeding militates significantly in favor of declining jurisdiction."[18] A state court proceeding is parallel if it "involv[es] the same parties and present[s] [the] opportunity for

---

[10] Fla. Compl. ¶¶ 41-48.

[11] *Id.* ¶¶ 64, 73, 77-79.

[12] *Esurance Ins. Co. v. Bowser*, 710 F. App'x 110, 111 (3d Cir. 2018) (quoting 28 U.S.C. § 2201(a)).

[13] *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (citation omitted).

[14] *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

[15] *Esurance*, 710 F. App'x at 111 (citations omitted).

[16] 751 F.3d 129 (3d Cir. 2014).

[17] *Id.* at 145–46.

[18] *Id.* at 144-45.

3

ventilation of the same state law issues."[19] Germane factors include "the scope of the pending state court proceeding[,] the nature of the defenses open there," and whether necessary parties are subject to the jurisdiction of the court and have been joined.[20]

After determining whether there is a parallel state court proceeding, courts consider the following *Reifer* factors, to the extent they are relevant:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.[21]

The Court analyzes Wells Fargo's motion to dismiss within this framework.

### A. The Existence of a State Parallel Proceeding

The parties dispute whether the Florida action should be considered a parallel proceeding to this federal case. Penn Mutual and Wells Fargo are parties in both actions. In this federal declaratory judgment action, Penn Mutual named only Wells Fargo and Arthur Criden.[22] In the Florida state action, Wells Fargo has named Penn Mutual, Arthur Criden as the personal representative of the Criden-Roebuck Estate, and Larry Schweiger as defendants.

---

[19] *Wilton*, 515 U.S. at 283.

[20] *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942); *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 284 (3d Cir. 2017).

[21] *Reifer*, 751 F.3d at 146. The eighth *Reifer* factor is not implicated because this action does not involve an insurer's duty to defend.

[22] Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), Penn Mutual dismissed its claims against Defendant Arthur Criden without prejudice.

4

Penn Mutual contends that the Florida court cannot exercise personal jurisdiction over it and thus there is no parallel state court action for purposes of abstention. Therefore, as a threshold matter, this Court must determine whether the Florida court has personal jurisdiction over Penn Mutual for Wells Fargo's breach of contract claim.

For a Florida court to exercise personal jurisdiction over a nonresident defendant, the defendant must be subject to personal jurisdiction under Florida's long-arm statute; and the defendant must have sufficient minimum contacts with the state to satisfy due process[23] Because Penn Mutual concedes that the Florida court has jurisdiction under the state's long-arm statute,[24] this Court must only determine whether: (1) Penn Mutual has sufficient minimum contacts with Florida; and (2) the exercise of jurisdiction over Penn Mutual would offend "traditional notions of fair play and substantial justice."[25]

### 1. Minimum Contacts

The minimum contacts requirement is satisfied where: (1) the plaintiff's claims "arise out of or relate to" defendant's contacts with the forum state; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the defendant's contacts within the forum state are "such that it should reasonably anticipate being haled into court there."[26]

Sufficient minimum contacts exist to justify haling Penn Mutual into a Florida court. First, Wells Fargo's breach of contract claim arises out of Penn Mutual's contacts with Florida. Wells Fargo alleges Penn Mutual breached a policy that Penn Mutual solicited through a Florida

---

[23] *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 500 (Fla. 1989) (citation omitted)

[24] *See* Fla. Stat. § 48.193(1)(a)(4); Pl.'s Opp. Mot. Dismiss at 4, n.2.

[25] *See Venetian Salami Co.*, 554 So. 2d at 500 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[26] *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996) (applying Florida law); s*ee also Venetian Salami Co.*, 554 So. 2d at 500 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)).

insurance agent, issued on the life of a Florida resident, and put into effect in Florida when Ms. Criden-Roebuck paid it the initial premium due on the Policy by a check drawn on her account in Florida. Therefore, Penn Mutual's activities in the state of Florida are connected directly to Wells Fargo's cause of action.

Penn Mutual contends that based on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,[27] the Florida court does not have personal jurisdiction over it for purposes of Wells Fargo's breach of contract claim. In *Bristol-Myers Squibb*, the Supreme Court held that for a suit to "aris[e] out of or relat[e] to the defendant's contacts with the forum . . . there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State."[28] Penn Mutual argues that there is no personal jurisdiction over it in Florida in relation to claims by Wells Fargo, a South Dakota entity that owns the policy, or the original owner of the policy, a Delaware trust. But there were significant activities that occurred in Florida: Penn Mutual issued the policy through an insurance agent in Florida, on the life of a Florida resident, and put the policy into effect in Florida. Penn Mutual, through its Florida insurance agent, "deliberately reached out" to a Florida resident and issued a life insurance policy that envisioned continuing contacts with the insured in Florida in the form of premium payments.[29] Because "[t]he primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum State"[30] and the "prior negotiations and contemplated future consequences, along with the

---

[27] 137 S. Ct. 1773 (2017).

[28] *Id.* at 1780.

[29] *Id.* at 480.

[30] *Id.* at 1779 (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

6

terms of the contract and the parties' actual course of dealing,"[31] evince a connection between Penn Mutual and Florida, the Florida court may exercise personal jurisdiction over Penn Mutual.

Penn Mutual purposefully availed itself of the Florida forum in such a way that it could reasonably foresee being haled into a Florida court; its contacts with the state can in no way be considered "random," "fortuitous," or "attenuated."[32] It was reasonably foreseeable that Penn Mutual's refusal to pay benefits under the life insurance policy it issued in Florida, on the life of a Florida resident, was likely to lead to litigation in a Florida court. The solicitation of life insurance products to Florida residents through an insurance agent in Florida further reinforces Penn Mutual's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."[33]

Finally, Penn Mutual argues that it is not subject to personal jurisdiction in Florida because Wells Fargo's claims against Penn Mutual arise from Penn Mutual's claim determination, which occurred in Pennsylvania. Under this reasoning, any claim against an insurance company could only be brought in the state where an insurance company reviewed the claim. Penn Mutual has cited no authority for the bold proposition that an insurer is not subject to personal jurisdiction in the state where the insured resides and the policy was issued and put into effect, and the Court declines to so hold.

### 2. Fair Play and Substantial Justice

Having determined that Penn Mutual has sufficient minimum contacts with Florida, the Court next considers whether the exercise of personal jurisdiction over Penn Mutual comports

---

[31] *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985).

[32] *Id.* at 480 (internal quotation marks and citation omitted).

[33] *Id.* at 482. The cases upon which Penn Mutual relies, *PTA-FLA, Inc. v. ZTE Corp.*, 715 F. App'x 237 (4th Cir. 2017); *Satterfield v. Gov't Employees Ins. Co.*, 287 F. Supp. 3d 1285 (W.D. Okla. 2018), do not compel a different result, as in those cases there were no contacts with the challenged forum relevant to the litigation.

with "fair play and substantial justice,"[34] analyzing: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; and (3) "the plaintiff's interest in obtaining convenient and effective relief."[35]

The exercise of personal jurisdiction over Penn Mutual in Florida comports with fair play and substantial justice. Penn Mutual has not shown that it would be burdened by having to litigate the case in Florida. Florida has a strong interest in adjudicating a case involving an insurance company licensed to do business in Florida and a policy that the company solicited through a Florida insurance agent, issued on the life of a Florida resident, and formed in Florida. Wells Fargo, the plaintiff in the Florida action, also has an interest in litigating the case in the Florida court, which can provide "convenient and effective relief" as it may exercise personal jurisdiction over all of the relevant parties.[36]

The Florida court has personal jurisdiction over Penn Mutual for Wells Fargo's claims, and all matters in controversy between the parties in this case can be fully adjudicated in the state action.[37] Therefore, the state breach of contract action is a parallel proceeding to this federal case.

### B. The *Reifer* Factors

The *Reifer* factors favor dismissal in favor of the state-court proceeding.[38] The first factor is whether a federal court declaration will resolve the uncertainty of the obligation which gives rise to the controversy. The issues of breach of contract and the validity of the Policy can be

---

[34] *See Int'l Shoe*, 326 U.S. at 320.

[35] *World-Wide Volkswagen Corp.*, 444 U.S. at 292.

[36] *See id.*

[37] *Reifer*, 751 F.3d at 137, n.9 (citing *Brillhart*, 316 U.S. at 495).

[38] *Id.* at 145 ("When state parallel proceedings do exist, district courts exercising jurisdiction should be rigorous in ensuring themselves that the existence of pending parallel state proceedings is outweighed by opposing factors.") (internal quotation marks and citation omitted).

determined in the state court, and this federal action will not resolve the entire controversy because the Florida action includes claims by Wells Fargo against Penn Mutual and Penn Mutual's Florida based agent Larry Schweiger, who is not a party to this action. The more comprehensive action in Florida state court can determine the validity of the Policy, whether Penn Mutual is liable for breach of contract for failing to pay the death benefit under the Policy, and whether Schweiger may be liable for fraud, negligent misrepresentation, and negligent procurement based on his alleged actions in connection with the Policy. Thus, this first *Reifer* factor weighs against exercising jurisdiction.

The second factor is the convenience of the parties. Both Penn Mutual and Wells Fargo are large corporate entities that have not shown any hardship in litigating either in Florida or Pennsylvania. However, Schweiger and other witnesses are located in Florida, and the Court also concludes that convenience favors one comprehensive resolution of the issues, which can only occur in state court.[39] This second factor therefore weighs against exercising jurisdiction.

The third factor considers the public interest in settlement of the uncertainty of the obligation. Here, the Florida court has the greater interest in determining what law applies to a policy issued in Florida, on the life of a Florida resident, and whether the policy is valid under the law. Moreover, both parties acknowledge that the obligations at issue arise solely as a matter of contract and are governed by state law. Thus, the desire of Penn Mutual to obtain a declaration that the Policy was void *ab initio* "has no special call on the federal forum," and the third factor weighs against exercising jurisdiction.[40]

---

[39] *See Sumner v. Tompkins Ins. Agencies, Inc.*, No. 16-2218, 2016 WL 3345453, at *10 (E.D. Pa. June 15, 2016) ("[T]he convenience of the parties is surely served by adjudicating the overlapping cases in one forum.").

[40] *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000).

The fourth factor is the availability and relative convenience of other remedies. As to this factor, Penn Mutual's other remedy would be to seek a declaration that the Policy is void *ab initio* in the Florida state court. Because Penn Mutual can pursue the same remedy in the parallel Florida action that it seeks here, the fourth *Reifer* factor weighs against exercising jurisdiction.

The fifth and sixth factors respectively consider the federal courts' general policy of restraint when the same issues are pending in a state court and the avoidance of duplicative litigation. As the Court has determined that the state action is a parallel proceeding, these factors weigh against exercising jurisdiction.

The seventh factor seeks to prevent the use of the declaratory judgment action as a method of procedural fencing, or as a means to provide another forum in a race for preclusive effect. Wells Fargo alleges that Penn Mutual engaged in procedural fencing by preemptively filing this federal declaratory judgment action before notifying Wells Fargo that its claim was being denied.[41] That Penn Mutual filed this declaratory judgment action before Wells Fargo could file suit in state court is not indicative of procedural fencing, because "[i]t is irrelevant [whether] the state declaratory judgment [action] was filed after its counterpart in federal court."[42] As there is no other indication of procedural maneuvering, the seventh Reifer factor is neutral.

Considered together, the *Reifer* factors weigh against exercising jurisdiction over this case, and do not outweigh the strong presumption against exercising jurisdiction in light of the pending state action. Consequently, the Court will decline to exercise jurisdiction. An order will be entered.

---

[41] Def.'s Reply Br. in Supp. Mot. to Dismiss 10.

[42] *Summy*, 234 F.3d at 136.